NOT FOR PUBLICATION

**FILED**

UNITED STATES COURT OF APPEALS

AUG 4 2026

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| UNITE HERE INTERNATIONAL UNION,<br><br>        Plaintiff - Appellant,<br><br>  v.<br><br>SKY CHEFS, INC.,<br><br>        Defendant - Appellee. | No. 24-5964<br><br>D.C. No.<br>2:22-cv-01938-PA-PVC<br><br>MEMORANDUM* |

Appeal from the United States District Court
for the Central District of California
Percy Anderson, District Judge, Presiding

Submitted December 4, 2025**
Pasadena, California

Before: BEA, BADE, and LEE, Circuit Judges.
Dissent by Judge LEE.

UNITE HERE International Union (the Union) appeals the district court's

refusal to order backpay to remedy a violation of Section 6 of the Railway Labor

Act (RLA), 45 U.S.C. § 156.  We have jurisdiction under 28 U.S.C. § 1291, and

---

\* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

\*\* The panel unanimously concludes this case is suitable for decision without oral argument.  *See* Fed. R. App. P. 34(a)(2).

we vacate and remand for further proceedings.

1.  The district court erred in concluding that it had discretion whether to award backpay as part of the status quo injunction.  Although the general presumption is that "a federal judge sitting as chancellor is not mechanically obligated to grant an injunction for every violation of law," Congress is free to depart from that default rule.  *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 313 (1982); *Tenn. Valley Auth. v. Hill*, 437 U.S. 153, 193–95 (1978).  Congress has traditionally been understood to have done so in two circumstances: "(a) when the statutory command is absolute and does not brook equitable discretion, and (b) when the statutory scheme permits *only* equitable relief and denial of that relief would be a denial of the right granted by the statute."  Dan B. Dobbs & Caprice L. Roberts, *Law of Remedies: Damages, Equity, Restitution* § 2.4(7), at 88 (3d ed. 2018).  Both circumstances are present under Section 6 of the RLA.

First, Section 6 provides that "rates of pay, rules, or working conditions shall not be altered by the [employer]" during a major dispute.  45 U.S.C. § 156.  "The word 'shall' generally indicates a command that admits of no discretion on the part of the person instructed to carry out the directive," *Nat'l Ass'n of Home Builders v. Defs. of Wildlife*, 551 U.S. 644, 661 (2007) (quoting *Ass'n of Civilian Technicians v. FLRA*, 22 F.3d 1150, 1153 (D.C. Cir. 1994)), and that is particularly true when the command is framed in the negative, thereby taking the form of a prohibition.

*See Tex. & Pac. Ry. v. Gulf, Colo. & S.F. Ry.*, 270 U.S. 266, 270, 273 (1926) (describing a similarly worded prohibition as "absolute" and explaining that the party seeking judicial enforcement of that prohibition was therefore "entitled as of right to an injunction"); *see also Tex. & New Orleans R.R. v. Bhd. of Ry. & S.S. Clerks*, 281 U.S. 548, 568 (1930) ("[A] definite statutory prohibition of conduct which would thwart the declared purpose of the legislation cannot be disregarded."). Consistent with the absolute character of Section 6's prohibition, when an injunction is sought to enforce the status quo ante during a major dispute, it becomes "the duty of the court to issue an injunction maintaining the status quo pending a final resolution of [the dispute]," *O'Donnell v. Wien Air Alaska, Inc.*, 551 F.2d 1141, 1148 (9th Cir. 1977), and "such an injunction will issue without regard for the traditional requisites in equity for obtaining injunctive relief," *Bhd. of Locomotive Eng'rs v. Consol. Rail Corp.*, 844 F.2d 1218, 1220 (6th Cir. 1988), *cited with approval in Consol. Rail Corp. v. Ry. Labor Execs.' Ass'n*, 491 U.S. 299, 303 (1989).

Second, only equitable relief can vindicate the right conferred upon the Union by Section 6, and the failure to grant restorative equitable relief would deny the Union a remedy for past violations of that right. The legal right created by Section 6 is a right to the status quo itself. *See Bhd. of Locomotive Eng'rs v. Balt. & Ohio R.R.*, 372 U.S. 284, 289–90 (1963); *Int'l Ass'n of Machinists & Aerospace*

*Workers v. Aloha Airlines, Inc.*, 776 F.2d 812, 816 (9th Cir. 1985). This right can be protected prospectively by a prohibitory injunction commanding the employer to refrain from departing from the status quo in the future—"[m]aintenance of the status quo is, of course, a traditional basis for equitable relief." *See Trans Int'l Airlines, Inc. v. Int'l Bhd. of Teamsters*, 650 F.2d 949, 967 (9th Cir. 1980). But a court of equity is not limited to granting only prospective relief for violations of Section 6, as "[t]hat right would be sacrificed or obliterated if it were without the remedy which courts can give for breach of such a duty or obligation." *Steele v. Louisville & Nash. R.R.*, 323 U.S. 192, 207 (1944). Thus, a court may issue a mandatory injunction providing for the restoration of the status quo prior to the defendant's unlawful act—another traditional basis for equitable relief. *See, e.g., Bhd. of Ry. & S.S. Clerks*, 281 U.S. at 557, 571; *Tex. & New Orleans R.R. v. Northside Belt Ry.*, 276 U.S. 475, 479 (1928).

No other form of retrospective relief is available for vindication of this right. The Union lacks Article III standing to seek damages on its own behalf, as the status quo does not have any intrinsic economic value to the Union as an entity. *See TransUnion LLC v. Ramirez*, 594 U.S. 413, 427–29 (2021). Congress has not affixed a penalty for violations of Section 6, so no fine can be imposed. *See* 45 U.S.C. § 152, subdiv. Tenth; *Detroit & Toledo Shore Line R.R. v. United Transp. Union*, 396 U.S. 142, 156 (1969); *United States v. Davis*, 588 U.S. 445, 464–65

(2019). And Congress has not granted the Union standing to seek damages on behalf of its members, so that remedy is not available either. *See United Food & Com. Workers Union v. Brown Group, Inc.*, 517 U.S. 544, 556–58 (1996) (explaining that associations generally lack standing to recover damages for injury to their members, but that "Congress may abrogate the impediment" by statute). Thus, a mandatory injunction restoring the status quo is the only judicial remedy that can provide relief for past violations of Section 6, and a district court therefore lacks discretion to refuse to issue this remedy when necessary to redress such a violation.[1] *See United Indus. Workers of Seafarers Int'l Union v. Bd. of Trustees of Galveston Wharves* (*Galveston Wharves II*), 368 F.2d 412, 413 (5th Cir. 1966) ("[T]he discretion granted [to] the District Court [is] not whether to restore the status quo but only how to restore it."); *accord O'Donnell*, 551 F.2d at 1148; *Steele*, 323 U.S. at 207.

2. The district court gave the following reasons in support of its decision to deny backpay: (1) even though Sky Chefs altered the rates of pay in violation of Section 6, its action was consistent with one of the purposes of the City of Los

---

[1] For similar reasons, we conclude that the Norris-LaGuardia Act does not prohibit an injunction to enforce the obligation imposed upon carriers by Section 6 of the RLA. *See Int'l Ass'n of Machinists v. Street*, 367 U.S. 740, 772–73 (1961); *see also Silver v. NYSE*, 373 U.S. 341, 357 (1963) ("Repeal is to be regarded as implied only if necessary to make the [second statute] work, and even then only to the minimum extent necessary.").

Angeles's Living Wage Ordinance—providing health insurance coverage for covered employees; (2) Sky Chefs made similar modifications at other facilities covered by similar ordinances without objection from the Union, which suggests that the violation of Section 6 was neither willful nor committed in bad faith; (3) the Union made proposals indicating that it was willing to end the market rate adjustment in exchange for a healthcare plan, and had Sky Chefs agreed to such a proposal, the Union's members would have experienced the same rate-of-pay change that occurred through Sky Chefs' unilateral action; (4) the Union's members received valuable health insurance coverage in lieu of the market rate adjustment; (5) determining the amount of backpay would require additional discovery and complex factfinding; and (6) awarding backpay might supplant administrative proceedings instituted by the City of Los Angeles against Sky Chefs.  To avoid reversing for a potentially harmless error, we consider whether these reasons provide a legally sufficient justification for the district court's decision.  *See* 28 U.S.C. § 2111.

The first, second, third, and fifth reasons are not relevant considerations. "The function of the court upon the application for an injunction is to construe a statutory provision and apply the provision as construed to the facts." *Tex. & Pac.*, 270 U.S. at 273.  As discussed above, when a court finds that an employer unlawfully altered the rates of pay, rules, or working conditions in violation of

Section 6, it becomes the court's non-discretionary "duty" to enforce that prohibition by way of an injunction restoring the status quo as completely as possible and prohibiting future violations of a similar nature. *O'Donnell*, 551 F.2d at 1148; *Galveston Wharves II*, 368 F.2d at 413. The balance of the equities between the parties therefore does not affect the entitlement to relief. *See Bhd. of Locomotive Eng'rs*, 844 F.2d at 1220; *Tex. & Pac.*, 270 U.S. at 273.

The fourth and sixth reasons could affect the propriety of awarding backpay, but not on this record. In resolving the backpay issues in this case, the district court should have looked to the traditional analytical framework for backpay awards under other labor statutes, a framework that presumptively applies here. *See Advanced Integrative Med. Sci. Inst., PLLC v. Garland*, 24 F.4th 1249, 1256 (9th Cir. 2022); *Bhd. of R.R. Trainmen v. Jacksonville Terminal Co.*, 394 U.S. 369, 383 (1969). Drawing from that traditional framework, the Union has the burden of establishing (1) the existence of a violation of Section 6; (2) that the violation of Section 6 resulted in its members being paid wages at a lower rate of pay than they were entitled to under the status quo; and (3) the gross amount of backpay due. *NLRB v. United Bhd. of Carpenters & Joiners*, 531 F.2d 424, 426 (9th Cir. 1976). Once this prima facie case has been made, the burden shifts to Sky Chefs "to

produce evidence to mitigate its liability."[2]  *NLRB v. Mercy Peninsula Ambulance Serv., Inc.*, 589 F.2d 1014, 1017 (9th Cir. 1979).

It is undisputed that a violation of Section 6 occurred and that this violation resulted in members of the Union being paid wages at a lower rate of pay than was provided for in the collective bargaining agreement.  And in its motion for an injunction, the Union explained in general terms how the gross amount of backpay should be calculated, argued that certain facts necessary to the exact calculation were "known to Sky Chefs," and requested that the district court "order the parties to pursue the mediation and discovery procedures they agreed upon for resolving

---

[2] The dissent suggests that we should allow the district court to address the question of the appropriate analytical framework in the first instance.  *Dissent* at 5 n.2.  But to avoid reversing for a harmless error, it is necessary to determine whether the provision of health insurance coverage in lieu of the market rate adjustment justifies a refusal to order backpay.  *Unigard Sec. Ins. Co. v. Lakewood Eng'g & Mfg. Corp.*, 982 F.2d 363, 367 (9th Cir. 1992).  And in doing so, we must identify the governing principles of law for resolution of this issue—"[i]t is emphatically the province *and duty* of the judicial department to say what the law is."  *Loper Bright Enterps. v. Raimondo*, 603 U.S. 369, 385 (2024) (quoting *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 177 (1803)) (emphasis added); *accord All. for the Wild Rockies v. Higgins*, — F.4th —, 2026 WL 2054202, at *5 n.5 (9th Cir. 2026).  Moreover, the NLRA burden-shifting framework, even if has not been explicitly applied to the RLA, is not novel.  Instead, it is an application of the general principle that the plaintiff bears the burden of proving a prima facie case for relief, including the amount of relief, and the defendant bears the burden with respect to any affirmative defenses or counterclaims, including a right to a setoff or recoupment.  *Faria v. M/V Louise*, 945 F.2d 1142, 1143 (9th Cir. 1991); *Payan v. Aramark Mgmt. Servs. Ltd. P'ship*, 495 F.3d 1119, 1122 (9th Cir. 2007); *Nayab v. Capital One Bank (USA), N.A.*, 942 F.3d 480, 494 (9th Cir. 2019); *Newbery Corp. v. Fireman's Fund Ins. Co.*, 95 F.3d 1392, 1399 (9th Cir. 1996).

disputes over backpay." The district court's refusal to allow discovery on this important issue was an abuse of discretion. *See Colchester v. Lazaro*, 16 F.4th 712, 725–27 (9th Cir. 2021).

As for mitigation of liability, the district court was correct to be concerned about the inequity of ordering the full gross amount of backpay due, given the circumstances of this case. Because any order of backpay would be equitable in nature, the district court has authority only to order Sky Chefs to "perform the [employment] contract[s] on the precise terms agreed upon by the parties" and "do precisely what [it] ought to have done without being coerced by [the] court." 71 Am. Jur. 2d *Specific Performance* § 1; *see also Albemarle Paper Co. v. Moody*, 422 U.S. 405, 418–19 (1975) ("The injured party is to be placed, as near as may be, in the situation he would have occupied if the wrong had not been committed." (quoting *Wicker v. Hoppock*, 73 U.S. (6 Wall.) 94, 99 (1867))); *Columbia Pictures Indus., Inc. v. Fung*, 710 F.3d 1020, 1049 (9th Cir. 2013) ("[I]njunctive relief should be no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs before the court." (quoting *L.A. Haven Hospice, Inc. v. Sebelius*, 638 F.3d 644, 664 (9th Cir. 2011)) (internal quotation marks omitted)). Thus, to the extent that Sky Chefs has already paid some or all of the gross amount of backpay due, the district court should offset that amount in the final calculation of liability—under no circumstances should the Union's members

receive a double recovery. *See Teutscher v. Woodson*, 835 F.3d 936, 954 (9th Cir. 2016). But the record does not suggest that Sky Chefs has remunerated any employee affected by its violation of Section 6 (or that a backpay award would otherwise result in a double recovery).

In a similar vein, the value of the health insurance coverage provided to the Union's members in lieu of the market rate adjustment could *possibly* mitigate Sky Chefs' total liability. *Cf. Porter v. Warner Holding Co.*, 328 U.S. 395, 398 (1946) (explaining that a court of equity may "adjust and reconcile competing claims" between the parties). But the unilateral provision of this benefit does not *necessarily* mitigate Sky Chefs' liability for failing to pay its employees the rates of pay in effect at the time the dispute began. *See* 70 C.J.S. *Payment* §§ 9, 25 ("In the absence of agreement or consent, the services [rendered by the debtor] cannot be considered as payment, and services voluntarily rendered do not extinguish or reduce the debt."); 8 *Corbin on Contracts* § 36.9 (2025) (explaining that "actual receipt and enjoyment of [non-conforming] benefits" is "absolutely necessary" for proving "quantum meruit," and even then, "actual use does not necessarily prove net benefit" because "[t]he value of the use may be more than offset by the injury from breach"). It is Sky Chefs' burden to show that it is entitled to an offset on this basis, and on this record, it cannot be said that Sky Chefs has carried its burden.

24-5964

In sum, we conclude that the district court erred in refusing to restore the status quo with respect to the rates of pay in effect prior to the major dispute.  We therefore vacate that portion of its order and remand for further proceedings to determine the gross amount of backpay due and whether Sky Chefs' liability should be mitigated by any amount.

**VACATED AND REMANDED**.

*UNITE HERE Int'l Union v. Sky Chefs, Inc.*, No. 24-5964

LEE, Circuit Judge, dissenting:

Sky Chefs—an airplane catering and customer service employer—offered a choice of two healthcare insurance plans for its employees at Los Angeles International Airport (LAX). Under either plan, the company would cover 65% of the premium costs—and the employees would pay the remaining 35%. Under the City of Los Angeles' Living Wage Ordinance, if the chosen healthcare plan's benefits fell below an "hourly value of [] healthcare" established by the City, then the company would pay the differential in cash to the employee. *See* Los Angeles Admin. Code Ch. 1, Art 11, Div. 10, § 10.37.2(a)(3).

But that created an incentive for some employees to choose the skimpier insurance plan (or opt out of employer coverage altogether) and instead collect additional cash payments. UNITE HERE, a national bargaining unit representing approximately 10,000 of Sky Chefs' employees, was concerned that "if the cash was paid into people's pockets and people started living off of the cash as part of their wage, it would be next to impossible to redirect that money back into healthcare." The Union wanted a no-cost or low-cost employee insurance plan and asked Sky Chefs to negotiate a new agreement.

Sky Chefs ultimately responded by unilaterally modifying its employee health plans at LAX and offered a "no-cost" insurance plan that covered 100% of the premiums and reduced deductible, co-pay, and out-of-pocket expenses for its

employees. Because of these more generous benefits, some employees no longer received differential cash payments required under Los Angeles' Living Wage Ordinance. The Union sued, arguing that Sky Chefs could not unilaterally change its healthcare plan offerings under the parties' agreement.

The district court issued a comprehensive and permanent injunction in favor of the Union. In doing so, the district court applied Section 6 of the Railway Labor Act (RLA), 45 U.S.C. § 156, which requires that carriers maintain the "status quo" while engaged in a major dispute with its employees over compensation and working conditions. While the district court ordered that Sky Chefs restore its original offerings and pay the cash adjustment going forward, the district court relied on its equitable discretion to conclude that the status quo did *not* include the Union's request for an additional cash award to employees who claimed they preferred a market rate cash adjustment during earlier phases of the dispute.

In its rationale, the district court noted that those employees who claimed they would have otherwise elected plans qualifying for a cash adjustment had, during the dispute, received some value in the form of Sky Chefs' new—and more robust— health plan. Stated differently, those employees would otherwise be receiving a windfall because (a) they already benefitted from the more expensive health plan that provided better coverage with no premiums paid by the employees, *and* (b) they would still receive the differential cash payment that normally would be reserved for

employees who paid premiums for the less generous insurance plan. The district court also noted that the City of Los Angeles, in parallel proceedings, had already ordered Sky Chefs to pay these employees some restitution based on the City's assessment of the value of the healthcare benefits provided.

It is true, as the majority notes, that the Railway Labor Act is firm in creating employees' entitlement to the preservation of the status quo by dictating that "rates of pay, rules, or working conditions shall not be altered" during a major dispute. *See* 45 U.S.C. § 156. Although the word "shall" represents Congress' command that an *employer* has no discretion, the Act provides no further direction to the courts on how to ensure that the status quo remains intact. Even if the Act effectively forces the court to use its equitable discretion to ensure that employers comply with the Act, the statute provides no guidance to the district court on how to fashion directives that restore the status quo.

Not only that, it is difficult to see how providing cash payments to employees who already benefitted from the more generous and less expensive insurance coverage reinstates the status quo. It would be immensely difficult to figure out for each employee what costs they would have incurred in premiums, higher deductibles, larger co-pays, and other out-of-pocket expenses had they remained under the bare-bones insurance plan. Further, some employees likely would *not* have visited a healthcare professional for more minor ailments under their no-frills

insurance plan because of high out-of-pocket costs (or lack of coverage) but availed themselves to medical assistance under their more generous and less expensive insurance plan. It is not clear how a court should address such a situation. And another advantage of having better insurance coverage is peace of mind: The employees with better coverage already benefited from it but it is hard to place a monetary value for it. Finally, it is virtually impossible to figure out if employees *ex ante* would have preferred to be paid the extra cash (and still pay 35% of the premium and higher out-of-pocket expenses for worse coverage) over receiving better insurance coverage with no premiums and lower out-of-pocket expenses.[1] Of course, *ex post*—after having already received the benefits of the better and less expensive insurance—the employees would not surprisingly say that they would have preferred the bare bones coverage during that earlier period and now demand cash payments.

Given this statutory silence (or at least ambiguity) and the practical difficulty of reverting to the status quo, I would rely on our longstanding principle that district courts enjoy discretion in fashioning equitable relief. *See Powers v. McDonough*,

---

[1] The fact that some employees had earlier opted for the no-frills healthcare plan (with cash payments) does not mean that they would have still chosen the no-frills plan over the new no-cost plan that offers better benefits. As noted earlier, the employees before had a choice between two plans in which they had to pay 35% of the premium, regardless of which coverage they chose. Some may have opted for the cheaper insurance plan to avoid paying the heftier premiums of the more expensive plan.

163 F.4th 1162, 1196 (9th Cir. 2025) (quoting *Nat'l Wildlife Fed'n v. Nat'l Marine Fisheries Serv.*, 524 F.3d 917, 936 (9th Cir. 2008)) (internal quotation marks omitted) ("District courts have broad latitude in fashioning equitable relief.").

And here, the district court's rationale for the scope of the injunction was not arbitrary. As the majority notes, the district court made substantial factual findings to develop its course of action, and in its order listed six reasons why the court did not view what the Union claims is "back pay" to be part of the status quo. Absent frivolous action by the court or a clear directive of law divesting the court of its powers, we should decline to allow parties to set the terms that force the court's hand to balance the equities to the parties' preferences.[2]

I respectfully dissent.

---

[2] The majority also concludes that the district court should have read into the Railway Labor Act a wholly separate analytic framework, which the National Labor Relations Board uses to calculate back pay awards in unfair labor practices disputes. *See NLRB v. Mercy Peninsula Ambulance Serv., Inc.*, 589 F.2d 1014, 1017 (9th Cir. 1979); 29 U.S.C. § 160. But these statutes have little relation beyond sharing the general subject of employment disputes. And no authority in the Ninth Circuit or our sister circuits appears to have imported the NLRB framework into the RLA. And given that the Union seemingly did not present this argument to the district court, I would decline to find that the district court abused its discretion by failing to tread new ground on the Union's behalf.